# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE MARQUARDT,<br>10034 Pleasant Lake Blvd.<br>Parma, Ohio 44130 | )<br>)<br>)<br>) | CASE NO. |
| Plaintiff, | )<br>) | JUDGE |
| v. | )<br>)<br>) | |
| NICOLE CARLTON, individually<br>1701 Lakeside Avenue<br>Cleveland, Ohio 44114 | )<br>)<br>)<br>) | COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND ATTORNEYS' FEES |
| and | )<br>)<br>) | |
| CITY OF CLEVELAND,<br>c/o Barbara Langhenry, its Law Director<br>601 Lakeside Avenue, Room 106<br>Cleveland, OH 44144 | )<br>)<br>)<br>)<br>) | JURY DEMAND ENDORSED HEREON |
| Defendants. | ) | |

## PARTIES AND JURISDICTION

1. Plaintiff Jamie Marquardt was, at all relevant times, employed as a Captain in the City of Cleveland's Emergency Medical Service, a classified civil service position.

2. Defendant Nicole Carlton is the Commissioner of Emergency Medical Services for the City of Cleveland, and at all times relevant to the complaint, was the Acting Commissioner of Emergency Medical Services.

3. Defendant City of Cleveland is a municipality organized and existing under the Constitution and laws of the State of Ohio.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, this being a civil action

arising under the Constitution and the laws of the United States.

5. Jurisdiction is also conferred upon this Court by 28 U.S.C. §1343(a)(3) and (4), 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988, this being an action for money damages, and for declaratory and injunctive relief authorized by law to redress deprivations under color of law of rights, privileges and immunities secured by the Constitution of the United States. Jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. §1367.

6. At all times pertinent to this Complaint, and in taking all of the actions described in this Complaint, Defendants acted under color of law and were effecting the custom and policy of the City of Cleveland.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

Background

7. On November 22, 2014, the Cleveland Police Department received a report that a black male was pulling a gun and pointing it at people near the Cudell Recreation Center in Cleveland, Ohio. Two police officers responded, and within seconds of their arrival on the scene, the suspect was shot. The suspect, 12 year old Tamir Rice, passed away the next day.

8. The story of Tamir Rice and the circumstances surrounding his death were widely reported in the local and national media, including an episode on the CBS news show "60 Minutes."

9. Among other things, news stories and public reports and comments concerning the incident addressed police-community relations, the reaction of the officers and the reasonableness of their response, the propriety of a youngster playing with a replica weapon, gun violence, and how ordinary citizens would respond in that situation.

10. Locally, for example, on cleveland.com, one citizen commented, "Had I been in the

park that day, and I saw someone reaching for or pointing a gun at me, and I happened to have a license to carry a gun, I might have shot that not-so-innocent big boy, who didn't appear to be "playing". Was this tragic, of course it was. But I do not blame the police."

http://blog.cleveland.com/letters/2015/11/innocent_little_boy.html (last accessed 1/24/18).

Another individual wrote, "I am an armed citizen. If I was there I would have killed him too. The law allows it. Enough said." http://blog.cleveland.com/letters/2015/11/innocent_little_boy.html (last accessed 1/24/18).

11. The Rice family sued the City of Cleveland and others, and in April 2016, the suit was settled, the results of which were also reported in the news media.

Jamie Marquardt's Termination

12. Jamie Marquardt was hired by the City of Cleveland in 1991 as a paramedic. Over the course of his career with EMS, he rose to the rank of captain.

13. He was not a first responder at the Rice shooting, and had nothing to do with the events surrounding Tamir Rice's death.

14. Nonetheless, he was terminated from his employment with the City by Defendant Carlton because of comments about the Rice incident that Defendant Nicole Carlton wrongly attributed to him.

15. Specifically, on the evening of February 13, 2016, an acquaintance of Plaintiff's known to him only as Donnie arrived unannounced at Plaintiff's home, seeking help.

16. When Donnie arrived at Plaintiff's home that evening, he was agitated and suicidal.

17. Plaintiff stayed up throughout the night of February 13 and into the morning of February 14 with Donnie to calm him down and to help him.

18. More particularly, during the early morning hours on February 14, 2016, while assisting Donnie, Plaintiff communicated with a third-party and stated that he had been caught up in a "drama." Several hours later, he communicated with that same individual that he was going to accompany Donnie to a psychiatric ward.

19. Plaintiff and Donnie did not go to a hospital, but remained awake and talking throughout the night and into the early morning hours. Plaintiff was finally able to go to sleep sometime after 5:00 a.m. When he did, he left his cell phone sitting on his kitchen table.

20. When Plaintiff awoke, Donnie was gone. Later, when Plaintiff picked up his cell phone, he saw a number of messages and texts from friends relating to a Facebook post that had appeared on his personal Facebook page.

21. Plaintiff's Facebook page did not identify himself as an EMS worker or employee of the City of Cleveland.

22. Plaintiff reviewed the phone messages and texts that had been left for him, and then accessed his Facebook page. When he saw the two messages that had been posted while he slept, he was appalled by their content.

23. Plaintiff immediately deleted the posts. In a separate post, he wrote that someone had made some awful posts under his name and disavowed their content, writing "I do not believe or stand for what was written. If my good friends did not text me, I would have never known it was there."

24. Plaintiff also sent a text message, unsolicited, to his supervisor, Defendant Carlton, that explained what had happened. He informed her, as he had posted, that he did not create or post the content of the information that had appeared on his Facebook page and expressly stated to her

that those posts did not reflect his beliefs.

25. Defendant Carlton asked Plaintiff to forward the posts to her, but he could not, since he had already deleted them.

26. Defendant Carlton thereafter initiated an investigation into the posts that had appeared on Plaintiff's Facebook page. Plaintiff fully cooperated with the investigation.

27. On March 16, 2016, Defendant Carlton terminated Plaintiff's employment with the City based solely on the content of the Facebook posts. In doing so, she acknowledged and recognized that Plaintiff's position– that he did not create or post the material, or authorized it to be posted– had remained consistent.

28. Specifically, she terminated him because the content of the posts that she attributed to Plaintiff– "Let me be the first on record to have the balls to say Tamir Rice should have been shot and I am glad he is dead. I wish I was in the park that day as he terrorized innocent patrons by pointing a gun at them walking around acting bad I am upset I did not get the chance to kill the criminal fucker," and "Stop Kevin. How would you feel if you were walking in the park and some ghetto rat pointed a gun in your face. Would you look to him as a hero? Cleveland sees this felony [sic] hood rat as a hero. . ."– allegedly violated certain Cleveland Civil Service Rules and EMS Policies and Procedures.

29. In terminating Plaintiff, Defendant Carlton believed the content of the Facebook posts she attributed to him violated Sections 101.01-1, 101.02-1, 102.01-2,4, 102-02-1, 104.02-1, 2, 3, 4, and 202.01-1 and 2 of the Division Of Emergency Medial Service Manual of Rules and Regulations; Section 1.20 Division of Emergency Medical Service General Orders; and, Rules 9.10-5, and 9-10.18 of the Civil Service Rules of the City of Cleveland (collectively "Rules and Regulations").

30. Defendants' termination of Plaintiff because of the content of the Facebook posts attributed to him was willful, wanton, and malicious, and in derogation of Plaintiff's constitutional rights.

## COUNT ONE

31. Plaintiff incorporates paragraphs 1 through 30 of his Complaint as if fully rewritten.

32. Defendants investigated, charged, and terminated Plaintiff with violating the Rules and Regulations because of the content of the constitutionally protected expression they attributed to him.

33. As a direct and proximate result of the Defendants' misconduct in investigating, charging, and terminating Plaintiff for the content of the constitutionally protected expression they attributed to him, Plaintiff has been, and continues to be, deprived of his rights secured by the First and Fourteenth Amendments to the United States Constitution; he has been chilled from engaging in constitutionally protected expression; he has suffered and continues to suffer embarrassment, humiliation, anxiety, lost wages, and the loss of employment and job opportunities, for all of which he is entitled to compensatory and punitive damages.

## COUNT TWO

34. Plaintiff incorporates paragraphs 1 through 33 of his Complaint as if fully rewritten.

35. Cleveland Cod. Ord. 171.49 makes it a misdemeanor crime for any employee of the City to enforce or attempt to enforce any order, rule, regulation, or directive that prohibits any other employee from exercising his right to free speech as constitutionally and legally guaranteed.

36. Ohio Rev. Code §2307.60 grants a civil cause of action for violations of criminal law, and authorizes the recovery of compensatory and punitive damages, attorneys' fees and other

expenses in bringing the civil claim.

37. Defendants enforced the aforementioned Rules and Regulations against Plaintiff and in doing so violated his constitutional rights.

38. As a direct and proximate result of the Defendants' misconduct in investigating, charging, and terminating Plaintiff for the content of the constitutionally protected expression they attributed to him, Plaintiff has suffered and continues to suffer embarrassment, humiliation, anxiety, lost wages, and the loss of employment and job opportunities, for all of which he is entitled to compensatory and punitive damages.

## COUNT THREE

39. Plaintiff incorporates paragraphs 1 through 38 of his complaint as though fully rewritten.

40. Section 615.13 of the Cleveland Codified Ordinances makes it a crime for a public servant under color of her office to deprive a person of any constitutional or statutory right.

41. Ohio Rev. Code §2307.60 grants a civil cause of action for violations of criminal law, and authorizes the recovery of compensatory and punitive damages, attorneys' fees and other expenses in bringing the civil claim.

42. Defendants misconduct in terminating Plaintiff for the content of the constitutionally protected expression they attributed to him violated his rights secured by the First and Fourteenth Amendments to the Constitution.

43. As a direct and proximate result of the Defendants' misconduct in terminating Plaintiff for the content of the expression they attributed to him, Plaintiff has suffered and continues to suffer embarrassment, humiliation, anxiety, lost wages, and the loss of employment and job

opportunities, for all of which he is entitled to compensatory and punitive damages.

## COUNT FOUR

44. Plaintiff incorporates paragraphs 1 through 43 of his complaint as if fully rewritten

45. Ohio Rev. Code §2921.45 makes it a crime for a person acting under color of her office, employment, or authority, to knowingly deprive or attempt to deprive any person of a constitutional right.

46. Ohio Rev. Code §2307.60 grants a civil cause of action for violations of criminal law, and authorizes the recovery of compensatory and punitive damages, attorneys' fees and other expenses in bringing the civil claim.

47. Defendants acted under color of law and office employment and authority to deprive Plaintiff of his rights secured by the First and Fourteenth Amendments to the Constitution.

48. As a direct and proximate result of the Defendants' misconduct in terminating Plaintiff for the content of the expression they attributed to him, Plaintiff has suffered and continues to suffer embarrassment, humiliation, anxiety, lost wages, and the loss of employment and job opportunities, for all of which he is entitled to compensatory and punitive damages.

## COUNT FIVE

49. Plaintiff incorporates paragraphs 1 through 48 of his complaint as if fully rewritten.

50. Defendant City of Cleveland has failed to train or inadequately trains its supervisory employees, including but not limited to Defendant Carlton, that non-work related expression on matters of general public concern are constitutionally protected and that employees cannot be disciplined for having engaged in expression whose content is constitutionally protected

51. As a direct and proximate result of the Defendant City of Cleveland's failure to train,

Plaintiff has suffered and continues to suffer embarrassment, humiliation, anxiety, lost wages, and the loss of employment and job opportunities, for all of which he is entitled to compensatory damages.

## COUNT SIX

52. Plaintiff incorporates paragraphs 1 through 51 of his Complaint as if fully rewritten

53. The Rules and Regulations pursuant to which Plaintiff's employment was terminated are unconstitutional under the First and Fourteenth Amendments to the United States Constitution, on their face and as applied for each of the following reasons:

   a. the policies operate as an unconstitutional prior restraint on the dissemination of constitutionally protected expression;

   b. the policies are unconstitutionally overbroad;

   c. the policies are unconstitutionally vague;

   d. the policies operate to chill protected speech; and,

   e. the policies are impermissible content-based restrictions on expression that do not further any governmental interest, substantial, compelling or otherwise.

54. Plaintiff is therefore entitled to a declaratory judgment that these policies are unconstitutional on their face and as applied under the First and Fourteenth Amendments to the United States Constitution.

## COUNT SEVEN

55. Plaintiff incorporates paragraphs 1 through 54 of his Complaint as if fully rewritten.

56. The Rules and Regulations pursuant to which Plaintiff was terminated have deprived him of his rights guaranteed by the First and Fourteenth Amendments to the United States Constitution to engage in expressive activity, to be free from prior restraint and to be free from

vague, irrational, arbitrary and capricious rules and regulations, all of which have caused, and threaten to cause in the future, irreparable harm for which there is no adequate remedy at law.

57.     As a direct and proximate result of the enforcement of the unconstitutional Rules and Regulations against Plaintiff by Defendants and the irreparable Plaintiff has suffered and will continue suffer, Plaintiff is entitled to the injunctive relief demanded hereunder.

WHEREFORE, Plaintiff demands upon Count One of his Complaint compensatory damages against the Defendants, jointly and severally, and punitive damages against Defendant Carlton in a like amount; and,

Upon Count Two of his Complaint, compensatory and punitive damages as against the Defendants; and,

Upon Count Three of this Complaint, compensatory and punitive damages as against the Defendants; and,

Upon Count Four of this Complaint, compensatory and punitive damages as against the Defendants; and

Upon Count Five of this Complaint, compensatory damages as against Defendant City of Cleveland; and,

Upon Count Six of this Complaint, a declaration that the Rules and Regulations are unconstitutional under the First and Fourteenth Amendments, on their face and as applied; and,

Upon Count Seven of this Complaint, a permanent injunction enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them from enforcing the Rules and Regulations; and directing Defendants to reinstate Plaintiff to his former position as Captain in the EMS of the City of Cleveland, and to make him whole with regard

to back pay and other benefits of employment; and,

Upon all Counts of this Complaint, the costs and expenses of maintaining this action, including Plaintiff's reasonable attorneys' fees, as well as any other relief, whether legal or equitable, to which Plaintiff may be entitled.

    /s/ Steven D. Shafron
STEVEN D. SHAFRON (0039042)
sshafron@bgmdlaw.com
WILLIAM C. LIVINGSTON (0089538)
wlivingston@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (fax)

Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury with the maximum number of jurors allowed by law.

    /s/ Steven D. Shafron
STEVEN D. SHAFRON (0039042)
sshafron@bgmdlaw.com
WILLIAM C. LIVINGSTON (0089538)
wlivingston@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio  44113-1949
(216) 781-5245
(216) 781-8207 (fax)

Attorneys for Plaintiff