# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAMIE MARQUARDT, | ) | CASE NO. 1:18-CV-333 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER JR. |
| | ) | |
| v. | ) | |
| | ) | PLAINTIFF'S BRIEF IN SUPPORT OF HIS |
| NICOLE CARLTON, et al., | ) | MOTION FOR ATTORNEYS' FEES AND |
| | ) | COSTS |
| Defendants. | ) | |

Plaintiff filed his motion for attorneys' fees and costs in this matter on September 6, 2019. In that motion, he requested an additional 45 days to file his supporting brief and materials. (Doc. 33). Plaintiff now submits his supporting brief and materials.

## STATEMENT OF FACTS

Plaintiff brought suit in this matter after Defendants terminated him from his employment as a result of posts that appeared on his Facebook page. Counts 6 and 7 of Plaintiff's Complaint alleged that Defendants' social media policy, pursuant to which he was terminated, was unconstitutional and therefore, Plaintiff was entitled to declaratory and injunctive relief. Counts 1 through 5 of Plaintiff's Complaint alleged that Plaintiff's speech was constitutionally protected and Defendants violated his constitutional and state statutory rights in terminating him on that basis. Defendants vigorously contested Plaintiff's claims throughout the litigation.

On August 23, 2019, this Court granted summary judgment in favor of Plaintiff on Counts 6 and 7 of his Complaint, declaring that Defendants' social media policy was unconstitutionally overbroad on its face and permanently enjoined Defendants from enforcing it.

Plaintiff's request for additional relief on Count 7, an order that he be reinstated and provided

with back pay, was denied..[1]

This Court also entered judgment in favor of Defendants on Counts 1 through 5 of Plaintiff's Complaint.

LAW AND ARGUMENT

I.     PLAINTIFF IS A PREVAILING PARTY WITHIN THE MEANING OF 42 U.S.C. §1988.

This Court entered judgment in favor of Plaintiff on two counts. Specifically, on Count 6, it declared Defendants' social media policy, pursuant to which Plaintiff was terminated, to be unconstitutionally overbroad on its face. On Count 7, this Court permanently enjoined Defendants from enforcing that policy.

When a plaintiff prosecutes a civil rights violation, the Supreme Court has stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011), *citing  Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968) (per curiam).

In *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 783 (1989), a teachers union brought a civil rights action challenging school board policies limiting communications with teachers concerning employee organization. The school district was granted judgment on most of petitioners' claims.  *Id.* at 786. The petitioners, however, prevailed on their claim that the school district's actions in prohibiting teacher-to-teacher discussion of employee organizations during the school day, and teacher use of internal mail and billboard facilities to discuss such organizations, were unconstitutional. *Id.* at 787.

---

[1] A motion to alter or amend the judgment is pending.

2

Even though the union failed to achieve success on all of its claims, the Supreme Court concluded it was the prevailing party:

> Petitioners here obtained a judgment vindicating the First Amendment rights of public employees in the workplace. Their success has materially altered the school district's policy limiting the rights of teachers to communicate with each other concerning employee organizations and union activities. Petitioners have thus served the "private attorney general" role which Congress meant to promote in enacting § 1988. They prevailed on a significant issue in the litigation and have obtained some of the relief they sought and are thus "prevailing parties" within the meaning of § 1988.

*Id.* at 793. Thus, a plaintiff need not succeed on all his claims to be considered a prevailing party.

In fact, "[a] plaintiff crosses the threshold to 'prevailing party' status by succeeding on a single claim, even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *McQueary v. Conway,* 614 F.3d 591, 603 (6th Cir. 2010) *citing Tex. State. Teachers Ass'n*, 489 U.S. at 790-791.

The Sixth Circuit has also made clear that a party who is successful in demonstrating that a law is unconstitutionally overbroad and is granted an injunction on that basis, is a prevailing party. There, the court stated:

> "Prevailing parties" are winning parties, and **a party who succeeds in showing that a law cannot be enforced in *any* of its applications due to overbreadth concerns is the epitome of a prevailing party—for he has won not just on behalf of himself but on behalf of many others as well**. One of the justifications for § 1988 is that it allows individual citizens to act as "private attorney[s] general," *Tex. State Teachers Ass'n*, 489 U.S. at 793, 109 S.Ct. 1486, making it odd to say that the litigant who truly acts on behalf of other citizens by bringing an overbreadth challenge is not entitled to fees.

*McQueary* 614 F.3d at 604 (italics in original, bold added).

The same is true here. Plaintiff prevailed on a significant issue in this litigation and served the "private attorney general" role envisioned by Congress by obtaining a declaration that

Defendants' social media policy is unconstitutional and a permanent injunction prohibiting Defendants from enforcing the policy ever again. Plaintiff's litigation protected and vindicated the constitutional rights of hundreds of City of Cleveland employees.

Indeed, by prevailing on Counts 6 and 7 of his Complaint, striking down Defendant's policy *in toto*, Plaintiff is the "epitome of a prevailing party." *McQueary*, 614 F.3d at 603.

*Farrar v. Hobby*, 506 U.S. 103 (1992)  and *Rhodes v. Stewart*, 488 U.S. 1 (1998) do not change that conclusion. In *Farrar*, the Supreme Court addressed the question whether a party that recovers only nominal damages is a "prevailing party" within the meaning of section 1988. The Court examined the fee award in a case in which the jury awarded the plaintiff nominal damages upon a finding that he had been deprived of an unspecified "civil right." *Id.* at 107. The Court reasoned that, in order to qualify as a prevailing party, a civil rights plaintiff "must obtain an enforceable judgment against the defendant from whom fees are sought." *Id.* at 111. The plaintiff must also receive a direct benefit meaning more than the mere "moral satisfaction" from "a favorable statement of law." *Id.* at 112. Accordingly, the elements of "prevailing party" status include "at least some relief on the merits" of the claim and relief through "an enforceable judgment against the defendant...or comparable relief..." *Id.* at 111. Plaintiff has achieved that here.

In *Rhodes*,  two inmates brought a § 1983 claim after they were refused permission to subscribe to a magazine. 488 U.S. at 2. The district court entered a declaratory judgment finding correctional officials had not applied the "proper procedures and substantive standards in denying the inmates their request, and ordered compliance with those standards."[2] But before the district

_____

[2]  More specifically, according to the Sixth Circuit's opinion, the district court determined that the defendants did not provide notice, an opportunity to be heard and an ultimate determination by a disinterested decision-maker. *Stewart v. Rhodes*, 845 F.2d 327 (6th Cir. 1988).

court entered its order, one plaintiff died and the other was released. *Id.* at 4. This caused the Supreme Court to conclude that "the case was moot before judgment issued." *Id.* at 4.

But clearly that is not what happened here. In this case, Plaintiff obtained injunctive relief, striking down the defendant's policy on grounds that it was facially overbroad. *See also, Hare v. Potter*, 549 F. Supp. 2d 698, 704 (E. D. Pa 2008) (plaintiff was a prevailing party because after receiving an injunction she was no longer merely an aggrieved ex-employee but a party responsible for ensuring a judicial directive is given full effect). Accordingly, Plaintiff obtained a judgment and achieved a benefit as a result of bringing his lawsuit.

Furthermore, neither *Farrar* nor *Rhodes* overruled the notion that a plaintiff who prevails as a "private attorney general," vindicating a constitutional right and causing the modification of a defendant's behavior, is entitled to attorneys' fees. *Tex. State. Teachers Ass'n*, 489 U.S. at 790-791; *Phelps v. Hamilton*, 120 F.3d 1126, 1132 (10th Cir.1997) (granting fees to plaintiff who received declaratory relief against a defendant, which was not directly enforceable against the defendant, because the purpose of fee-shifting is to encourage "individuals to seek relief")

Accordingly, by obtaining a judgment that Defendants' policy was facially unconstitutional under the First Amendment and barring its further enforcement, Plaintiff is a prevailing party within the meaning of Section 1988 and is entitled to his costs and reasonable attorneys' fees.

Finally, and as set forth more in detail in Plaintiff's Motion to Alter or Amend its Judgment (Doc. 35), Plaintiff submits that he is entitled to full relief, including reinstatement, as a result of this Court finding that Defendants' social media policy is unconstitutionally overbroad on its face. For this reason too, Plaintiff is a prevailing party and should be awarded costs, and his reasonable attorneys' fees.

5

II.       COMPUTING PLAINTIFF'S FEES AND COSTS.

The method of computing fees in this Circuit is well-established. The first step is to determine the lodestar, that is, the number of hours reasonably devoted to the case, multiplied by the reasonable hourly rate of the attorneys in question. *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 329 (6th Cir. 2001) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 437 (1981)).

Once the loadstar is calculated, the Court may, but need not, adjust it in light of the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714. 717-18 (5th Cir. 1974). *Adcock-Ladd*, 227 F.3d at 329 (*citing Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999))[3].

That said, the lodestar itself is more than an estimate or a simple point of departure. Absent some demonstrable reason for finding otherwise, the lodestar is strongly presumed to be the proper figure at which to set attorney fees:

> We emphasized, however, that the figure resulting from this calculation is more than a mere "rough guess" or initial approximation of the final award to be made. Instead, we found that "[w]hen . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled.

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (interpreting analogous provisions of the Clean Air Act, Clean Air Act, 42 U.S.C. § 7401 et seq., and *quoting Blum v. Stenson*, 465 U.S. 886, 897 (1984)); *Adcock-Ladd*, 227 F.3d at 350 (there exists a

---

[3] "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Reed*, 179 F.3d at 471–72 n. 3 (*citing Johnson*, 488 F.2d at 717–19).

6

"strong presumption" in favor of awarding the lodestar amount, and departures therefrom should be "rare" and taken in only "exceptional" cases).

A proper hourly rate is one sufficient to attract competent counsel of abilities commensurate with the complexities of the case at hand. *Delaware Valley*, 483 U.S. at 781 and Note 12.

The rate should reflect the prevailing market rate for counsel competent to perform the sort of work necessary in the case, in the legal market in which the services are performed. *Blum v. Stenson,* 465 U.S. 886*,* 895 (1984); *Adcock-Ladd*, 227 F.3d at 350; *Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002).

As demonstrated below, the services rendered in this case were provided by attorneys with the skill and expertise necessary to provide competent representation in a complex First Amendment case, and compensation for their services is being sought at or below the prevailing market rate in Cleveland for attorneys with such skills and experience.

### Steven D. Shafron

Steven D. Shafron is a 1987 graduate of the Case Western Reserve University Law School where, based upon his brief writing and advocacy skills, was inducted into the Order of Barristers. In December, 1987, he began to practice law as an associate attorney with the law firm then known as Berkman, Gordon, Murray and Palda.  In April, 1995, he became a partner in the firm presently known as Berkman, Gordon, Murray & DeVan.

In the course of his practice, he has been involved in civil and criminal matters at the trial and appellate levels.  He is admitted to practice in the Courts of Ohio, and the United States District Courts for the Northern and Southern Districts of Ohio, the Eastern and Western Districts of Michigan, the Northern District of Indiana, the Western District of Kentucky and the United States

7

Courts of Appeals for the Third, Fourth, Sixth and Seventh Circuits.

He has also appeared in proceedings before the National Labor Relations Board, the Federal Trade Commission, and various state administrative agencies.

The substantive areas of his practice are wide-ranging.  On the civil side, he has represented clients in matters involving Title VII, civil rights litigation under 42 U.S.C. §1983, both in the employment context and in connection with constitutional attacks on municipal and state laws.  He has represented clients in matters involving Fair Labor Standard Act, antitrust, zoning and land use, medical malpractice and personal injury, patent and trademark disputes, as well as general commercial litigation under the Uniform Commercial Code. With regard to his criminal law practice, he has represented clients charged with homicide, rape, theft, fraud, dereliction of duty, forgery, various drug offenses, obscenity law violations, as well as various misdemeanor offenses.

Mr. Shafron has also been involved in a number of appellate matters in both the state and federal courts, arguing before the Pennsylvania Supreme Court, the United States Court of Appeals for the Sixth and Seventh Circuits and courts of appeals in Ohio. Appeals in which he has served as counsel include:  *Golden Triangle News v. Fischer*, 553 Pa. 71, 717 A.2d 1023 (1998); *Annex Books, Inc. v. City of Indianapolis*, 740 F.3d 1136 (7th Cir. 2014); *Annex Books, Inc. v. City of Indianapolis*, 624 F.3d 368 (7th Cir.  2010); *Annex Books, Inc. v. City of Indianapolis*, 581 F.3d 460 (7th Cir. 2009); *Conchatta Inc. v. Miller,* 458 F.3d 258 (3rd Cir. 2006); *Giovani Carandola Ltd. v. Bason*, 303 F.3d 507(4th Cir. 2002); *Mallet v. United States*, 334 F.3d 491 (6th Cir. 2003);  *Douglas v. Argo-Tech Corp.,* 113 F.3d 67 (6th Cir. 1997);  *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129 (6th Cir. 1994); *Morscott, Inc.v. City of Cleveland*, 936 F.2d 271 (6th Cir. 1991); *Hull v. Cuyahoga Valley Joint Voc. School Dist. Bd. of Educ.*, 926 F.2d 505 (6th Cir.), *cert. denied,* 501 U.S. S.Ct. 1261 (1991); *Aseff*

8

*v. Cleveland Bd. of Zoning Appeals*, 142 Ohio App.3d 624, 756 N.E.2d 709 (Cuyahoga 2001); *State v. Quandt*, 143 Ohio App.3d 570, 758 N.E.2d 719 (Cuyahoga 2001); *State v. Gaul*, 117 Ohio App.3d 839, 691 N.E.2d 760 (Cuyahoga 1997); *City of Cleveland v. Corrai*, 70 Ohio App.3d 679, 591 N.E.2d 1325 (Cuyahoga 1990); *Brookpark News & Books, Inc. v. City of Cleveland*, 66 Ohio App.3d 613, 585 N.E.2d 908 (Cuyahoga App. 1990); and *State v. Fitzpatrick*, 76 Ohio App.3d 149 (1991).

He has also prepared a number of petitions for writs of certiorari in the Supreme Court of the United States

### William C. Livingston

Mr. Livingston graduated *magna cum laude* from the Cleveland-Marshall College of Law in 2012. While in law school, he was an Editor of the Cleveland State Law Review.

In November of 2012, Mr. Livingston joined Berkman, Gordon Murray & DeVan as an associate attorney. Since that time, he has been involved in various civil and criminal matters at both the trial and appellate levels. He is admitted to practice in the Courts of Ohio, the United States District Court for the Northern and Southern Districts of Ohio and the Sixth Circuit Court of Appeals.

Mr. Livingston has represented clients in matters involving Title VII, as well as civil rights litigation under U.S.C. §1983, in the employment context as well as in cases where individuals have been deprived of their First and Fourth Amendment rights by law enforcement, and also in connection with constitutional attacks on municipal, state and federal laws. He has prosecuted cases involving wrongful death, medical malpractice and personal injury and defended clients against claims of defamation.

In connection with his criminal law practice, he has represented clients charged with

9

homicide, rape and other sexual offenses, bank robbery, fraud, obscenity law violations, firearm offenses, assault, theft, various drug offenses, as well as variety of misdemeanor offenses. He has also represented individuals convicted of capital offenses in proceedings seeking post-conviction relief.

Regarding his appellate practice, Mr. Livingston has argued and written briefs in a number of appellate matters including, *State v. Polizzi*, 11th Dist. Nos. 2018-L-063, 2018-L-064, 2019-Ohio-2505*; Village of Highland Heights v. C.C.*, 8th Dist. No. 107703, 2019-Ohio-2333; *State v. M.J.*, 11th Dist. No. 2018-A-0046, 2019-Ohio-1420; *In re J.Y.*, 114 N.E.3d 1221, 2018-Ohio-2405 (8th Dist. 2018); *State v. Apanovitch,* 155 Ohio St.3d 358, 121 N.E.3d 351 (2018); *State v. Apanovitch*, 64 N.E.3d 429, 2016-Ohio-2831 (8th Dist. 2016); *DeVan v. Cuyahoga Cty Board of Revision*, 45 N.E.3d 661, 2015-Ohio-4279 (8th Dist. 2015).

### The Lodestar Calculation

In this matter, lead counsel Steven D. Shafron spent 191 hours in this matter at a rate of $300.00 per hour and William C. Livingston spent 171.75 hours at a rate of $200.00 per hour through September 13, 2019 in this matter.  Declarations from Plaintiff's counsel, an itemization for the work each attorney performed and their respective fee rates are attached hereto and incorporated herein. Accordingly, Plaintiff's attorneys' fees total $87,065.[4]

Having reviewed the credentials of counsel, the specifics of the case at bar, and drawing upon his own experience as a practicing attorney in the field of civil rights, Attorney Terry Gilbert has also submitted an affidavit expressing his opinion about the prevailing market rates at the time these legal services were rendered.  The testimony of Mr. Gilbert demonstrates that plaintiffs' request for

---

[4] Counsel submit that the application of the *Johnson* factors, on balance, does not militate toward a decrease in their overall fee award, and counsel do not seek an increase in that award.

attorneys' fees at a rate of $300.00 per hour for Mr. Shafron's services and $200.00 per hour for Livingston's services are reasonable, and that the time spent in the case was reasonable in the prosecution of Plaintiff's claims.

On September 6, 2019, Plaintiff filed a bill of costs in this matter, in the amount of $2,403.50 which represented the amount he was required to pay to obtain electronic transcripts of the five depositions that were taken in this matter and file his lawsuit. (Doc. 34).

Accordingly, as the prevailing party Plaintiff requests that he be awarded fees and costs in the amount of $89,468.50

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for an award of attorneys' fees and costs should be granted.

Respectfully submitted,

/s/ Steven D. Shafron
STEVEN D. SHAFRON (0039042)
sshafron@bgmdlaw.com
WILLIAM C. LIVINGSTON (0089538)
wlivingston@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN
55 Public Square, Suite 2200
Cleveland, Ohio 44113-1949
(216) 781-5245 / (216) 781-8207 (FAX)

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

The foregoing Plaintiffs' Brief in Support of his Motion for an Award of Attorneys' Fees and Costs was filed electronically on October 16, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven D. Shafron
STEVEN D. SHAFRON (0039042)
sshafron@bgmdlaw.com
WILLIAM C. LIVINGSTON (0089538)
wlivingston@bgmdlaw.com
BERKMAN, GORDON, MURRAY & DeVAN

Attorneys for Plaintiff

12